IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

IN RE: LIVING HOPE SOUTHWEST
MEDICAL SERVICES, LLC.                                    CASE NO. 4:06-BK-71484

PILLAR CAPITAL HOLDINGS, LLC                                          APPELLANT

VS.                            CASE NO. 4:11-CV-04043

RENEE S. WILLIAMS                                                      APPELLEE

## OPINION

Before the Court is an appeal from the March 12, 2011 Order of the United States Bankruptcy Court for the Western District of Arkansas.[1] Both the Appellant and Appellee have submitted issues for appeal. Appellant Pillar Capital Holdings, LLC contends that the bankruptcy court erred in entering judgment in favor of Appellee-Trustee and holding that Appellant's post-petition transfers to Debtor Living Hope Southwest Medical Services, LCC required bankruptcy court approval and are therefore avoidable by the Trustee. Appellant also argues that the bankruptcy court erred in not allowing them to adjudicate their administrative-expense claims in an adversary proceeding. Appellee-Trustee cross-appeals and asserts that the bankruptcy court erred in holding that Appellant's agent, Jack Goldenberg, was not personally liable for the post-petition transfers to Debtor.

---

[1] The Honorable James G. Mixon, Chief Judge, United States Bankruptcy Judge for the Western District of Arkansas.

I hereby attest and certify this is a printed copy of a document which was electronically filed with the United States District Court for the Western District of Arkansas.

3/30/12

Christopher R. Johnson, Clerk
By: _____ Charlotte Powell, Deputy Clerk

Entered On Docket: 04/04/2012

## I. BACKGROUND

The Debtor, Living Hope Medical Services ("Living Hope" or "Debtor"), filed for Chapter 11 bankruptcy in July 2006, and had its case converted to Chapter 7 in August 2008. This appeal concerns Living Hope's financial arrangements with Pillar Capital Holdings, LLC ("Pillar") from March 2008 through May 2008.

Pillar Capital Holdings, LLC, is a New York corporation that invests in financially troubled businesses. Jack Goldenberg is the sole member of Pillar. Pillar began counseling Debtor in early 2008 about, among other issues, payroll. One of the main problems Pillar saw in Debtor's operations was paycheck bouncing. Debtor would issue paychecks on Wednesday, but Northern Healthcare Capital ("NHC"), Debtor's court-approved post-petition creditor, did not fund Debtor's account until Friday. Pillar counseled Debtor to open accounts at HSBC Bank in New York so the checks would take longer to clear than they presently did at the local bank in Texarkana. Debtor opened three accounts at HSBC in New York, but this did not resolve the paycheck-clearing issues.

Pillar contends that Debtor was on the verge of an employee walk-out, and without Pillar's immediate financial intervention, Debtor could not have continued operations. In April 2008, Pillar began transferring money directly to Debtor's HSBC accounts so that Debtor's payroll checks would clear. Pillar charged no interest on its loans, and Debtor executed no formal promise to pay back the advances. However, Pillar and Debtor worked out a repayment plan that involved Pillar paying itself back for a prior transfer by filling out and depositing ten pre-signed blank checks given to Pillar by Debtor. Pillar made a total of nine transfers to Debtor's bank account. Pillar was repaid for six of these transfers by depositing six of the pre-signed checks into its account, totaling $86,200.00. Three of the pre-signed checks totaling $73,500.00 were filled out but not deposited. One of the pre-signed

2

checks totaling $15,000 was deposited but dishonored. There was also a $25,000.00 debit-ticket deposit to Pillar from Debtor's accounts-payable account that the bankruptcy court found to be part of the loan arrangement between Pillar and Debtor. In addition to the money transfers, Pillar also loaned Debtor equipment and allegedly made third-party purchases to aid Debtor.

In sum, Debtor repaid $111,200.00 to Pillar. This total includes $86,200.00 for loan repayments accomplished by Pillar filling out and depositing the Debtor's pre-signed checks. It also includes the $25,000.00 debit-ticket repayment. Pillar has yet to be repaid for the remaining $88,500.00 it transferred to Debtor's accounts and for the equipment and other third-party purchases it made on Debtor's behalf.

The Trustee filed a complaint against Pillar seeking to avoid the post-petition transfers from Debtor to Pillar. The bankruptcy court determined that because these credit extensions and repayments between Debtor and Pillar were not made in the ordinary course of business, they were avoidable by the Trustee. Accordingly, the bankruptcy court entered judgment against Pillar in the amount of $111,200.00 but declined to hold Jack Goldenberg personally liable for the post-petition transfers that led to the judgement. Pillar counter-claimed against the Trustee seeking payment of Debtor's outstanding debts as an administrative expense. The bankruptcy court dismissed this counter-claim without prejudice, finding that the administrative-expense claim was not properly brought in this adversary proceeding.

## II. STANDARD OF REVIEW

On appeal from the bankruptcy court, the district court sits as an appellate court. 28 U.S.C. § 158(a). When an order of the bankruptcy court is before the district court for appellate review, the district court reviews the bankruptcy court's conclusions of law *de novo* and its factual findings

under the clearly erroneous standard. *First Nat'l Bank of Olathe v. Pontow*, 111 F.3d 604, 609 (8th Cir. 1997); *Sinclair Oil Corp. v. Jones (In re Jones)*, 31 F.3d 659, 661 (8th Cir. 1994); *Miller v. Farmers Home Admin. (In re Miller)*, 16 F.3d 240, 242 (8th Cir. 1994).

### III. DISCUSSION

There are four issues before the Court on appeal: (1) whether the bankruptcy court erred in finding that the post-petition transfers between Pillar and Debtor were not made in the ordinary course of business and avoidable by the Trustee; (2) whether the bankruptcy court erred in denying Pillar *nunc pro tunc* approval of the post-petition transfers; (3) whether the bankruptcy court erred in denying Pillar's request for an administrative-expense claim; and (4) whether the bankruptcy court erred in finding that Pillar's agent, Jack Goldenberg, was not personally liable for the post-petition transfers to Debtor.

### A. Whether the post-petition transfers were made in the "ordinary course of business"

The primary issue on appeal is whether the bankruptcy court erred in finding that the post-petition transfers made between Pillar and Debtor were not made in the "ordinary course of business." Because the bankruptcy court found that these loans were not made in the ordinary course of business, it concluded that court authorization of the loan agreement was required and, because that authorization was never obtained, the post-petition transfers from Debtor to Pillar to pay back the loans were avoidable by the bankruptcy Trustee.

Debtor, Living Hope, was a debtor-in-possession under Chapter 11 during the relevant time period. Section 364(a) of the Bankruptcy Code permits a debtor-in-possession to "obtain unsecured credit and incur unsecured debt in the ordinary course of business ... as an administrative expense." 11 U.S.C. § 364(a). Pillar argues that the loans made to Debtor were in the "ordinary course of

business" because the Debtor used the loans to cover payroll and day-to-day operating expenses that had to be paid in order to keep the business open. Pillar also points out that short-term financing from a different creditor, NHC, was approved by the bankruptcy court to cover these same types of expenses.

This Court acknowledges that the money Debtor obtained from Pillar was used for payroll and other day-to-day operating expenses. This Court also acknowledges that the bankruptcy court approved a post-petition financing arrangement for these same types of expenses between NHC and Debtor. However, neither of those facts qualifies the post-petition transfers between Pillar and Debtor as transfers made in the ordinary course of business.

The bankruptcy court correctly utilized the widely accepted vertical and horizontal tests for determining whether an extension of credit is made in the ordinary course of business. The horizontal-dimension test asks "whether the post-petition transaction is of a type that other similar businesses would engage in as ordinary business." *Rajala v. Langer (In re Lodge America, Inc.)*, 259 B.R. 728, 732 (D. Kan. 2001). The vertical-dimension test asks whether the transactions at issue are "the sort occurring in the day-to-day operation of the debtor's business." *Id.* In essence, the horizontal test is an objective look at the transaction, applying industry standards and norms. The vertical test is a more subjective inquiry into whether a specific debtor routinely enters into these types of transactions and whether a reasonable creditor would have expected the debtor to engage in these types of transactions when they initially extended credit. *See In re Roth American, Inc.*, 975 F.2d 949, 953 (3d Cir. 1992). The creditor has the burden of providing evidence regarding industry norms and a debtor's day-to-day financing operations. *United States Trustee v. Lombardozzi (In re RJC Indus. Inc.)*, 369 B.R. 845, 850 (Bankr. M.D. Pa 2006); *In re Allegheny Health Educ.&*

*Research Foundation*, 127 Fed. Appx. 27 (3rd Cir. 2005); *Shields v. Duggan (In re Dartco, Inc.)*, 197 B.R. 860, 870 (Bankr. D. Minn. 1996).

Importantly, an ordinary course of business analysis does not focus on how the loaned proceeds are subsequently used. The fact that funds may be used to pay regular business expenses like payroll does not necessarily mean that the financing arrangement and loan transaction itself was one made in the ordinary course of business. *See In re Ockerlund Constr. Co.*, 308 B.R. 325, 327 (Bankr. N.D. Ill. 2004); *Rajala v. Langer (In re Lodge America, Inc.)*, 259 B.R. 728, 732 (D. Kan. 2001) (the court's focus was not on the fact that the debtor used the loan to pay its utilities but whether the debtor typically engaged in short-term financing arrangements in order to pay its utilities).

In this case, Pillar offers no evidence that addresses what the financing norms for Debtor's industry might be. Therefore, the Court must conclude that this financing arrangement where Pillar transferred money to Debtor's accounts and paid itself back with Debtor's blank checks does not pass the horizontal-dimension test.

Rather, Pillar appears to focus its arguments on considerations that fall under the vertical-dimension test. Specifically, Pillar argues that, because the funds from Pillar were used by Debtor to cover payroll and other day-to-day operating expenses, the credit extension was made in the ordinary course of business. The law, however, does not support this conclusion. The fact that the funds were used for "ordinary" expenses does not make the loan transaction itself ordinary.

Pillar also argues that its credit extension was in the ordinary course of Debtor's business because NHC, another one of Debtor's creditors, had received authorization from the bankruptcy court to enter into a financing arrangement to cover the same types of day-to-day expenses that

6

Pillar's loans were covering. The fact that the bankruptcy court approved an arrangement with NHC that allowed Debtor to obtains loans from NHC for operating expenses did not give Debtor unbridled freedom to then enter into any type of short term financing arrangement with any creditor that came along offering to cover the same types of expenses. Pillar's argument fails due to a misplaced focus on how the funds were used rather than how the loans and repayments were structured. In properly focusing upon the loan transactions themselves and not solely upon the way the funds were spent, it is abundantly clear that the arrangement between Pillar and Debtor was not the type of transaction a reasonable creditor would have expected Debtor to engage in. The bankruptcy court explained this well:

> Without Court approval and with only the knowledge of one other creditor, NHC, the Defendants transferred funds in various amounts and structured their transactions with the Debtor so that they would be repaid by filling in pre-signed, blank checks and negotiating them as soon as the Debtor's bank balances were sufficient to repay the Defendants. Through his access to the company books and his authority to dictate which bills to pay, Goldenberg was able, to some degree, to manipulate the bank balances and use his knowledge of the Debtor's finances to his advantage. Because Goldenberg knew precisely when the Debtor's bank account held sufficient funds to repay the credit he had extended, the Defendants gained a superior position over the other unsecured creditors with accruing claims.

(ECF No. 2, Doc. 7 at 15).

Even assuming that other creditors might have expected Debtor to obtain other post-petition, short term financing to cover day-to-day expenses without court approval, the Court is not convinced that reasonable creditors would expect or anticipate a financing arrangement like the one described above. The Court finds that the loans made by Pillar do not pass the vertical-dimension test and were not made in the ordinary course of Debtor's business. Therefore, the Trustee is entitled to avoid all unauthorized post-petition repayments from Debtor to Pillar. Accordingly, the Court

affirms the bankruptcy court's judgment against Pillar for the unauthorized post-petition transfers to Pillar in the amount of $111,200.00.

### B. Whether Pillar is entitled to *nunc pro tunc* approval of the post-petition transfers

If a creditor fails to show that a post-petition transfer was in the ordinary course of business under § 364(a), retroactive, *nunc pro tunc* approval of the transfer may be given under § 364(b). If this approval is granted, then the debt will be allowable as an administrative expense and cannot be avoided by the bankruptcy trustee. A *nunc pro tunc* order "should be reserved for truly extraordinary and unusual circumstances." *In re Ockerlund Constr. Co.*, 308 B.R. 325, 329 (Bankr. N.D.Ill. 2004). *See also In re Blessing Indus., Inc.*, 263 B.R. 268, 273 (Bankr. N.D. Iowa 2000). Among other things, it must also be shown that the bankruptcy court would have approved the arrangement if timely application had been made. *In re Blessing Indus.* at 273.

This Court is not persuaded that the bankruptcy court's denial of a *nunc pro tunc* order was in error. On appeal, Pillar argues that no other creditors were prejudiced by the transactions and the good faith nature of the transactions justifies *nunc pro tunc* approval. The Court is not persuaded that those considerations justify overlooking the fact that no extraordinary or unusual circumstances precluded Pillar from actually seeking bankruptcy court approval before engaging in the post-petition transfers. Furthermore, Pillar has not shown that approval of the bankruptcy court would have been given if it had been sought. The bankruptcy court correctly noted that the loan arrangement between Pillar and Debtor would not have resulted in court approval over another creditor's objection. For these reasons, the bankruptcy court correctly denied *nunc pro tunc* approval.

## C. Whether Pillar should be allowed to litigate its administrative-expense claims in an adversary proceeding

In the case below, the Pillar counterclaimed for administrative expenses comprising of loans to the Debtor for operating expenses; equipment purchased by Pillar but used by the Debtor; payments to third parties on the Debtor's behalf; Jack Goldenberg's unliquidated travel expenses; and a $25,000 good-faith deposit Pillar paid to NHC through National Mutual. (ECF No. 2-7, at 26). The bankruptcy court dismissed those claims without prejudice, finding that they could not be brought in an adversary proceeding.

"[A] claim for an administrative expense pursuant to section 503(b) is a core proceeding for which the bankruptcy court has jurisdiction under 28 U.S.C. § 157(b)(2). Even when contested, however, a 503(b) claim is not properly brought in an adversary proceeding." *In re Anderberg-Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir. 1997)(citing Fed. R. Bankr. P. 7001). *See also Colandrea v. Union Home Loan Corp. (In re Colandrea)*, 17 B.R. 568, 583 (Bankr. D. Md. 1992). Therefore, Pillar's administrative-expense claims are not adjudicable in this adversary proceeding. Any administrative-expense claim that Pillar wishes to pursue can be "appropriately brought by motion in the bankruptcy case ... ." *Id.*[2] This Court finds that the bankruptcy court did not err in refusing to allow Pillar to adjudicate its administrative-expense claim in an adversary proceeding.

---

[2] The Trustee argues that Pillar knowingly filed a fraudulent claim for recovery of the $25,000 good-faith deposit, and therefore is precluded from claiming that deposit as an administrative expense. Because administrative-expense claims are not properly before this Court, that question is not for this Court to consider. The Trustee is free to bring this issue before the bankruptcy court for consideration if Pillar chooses to bring an administrative-expense claim in the bankruptcy action.

9

### D. Whether Pillar's agent, Jack Goldenberg, should be held personally liable for the post-petition transfers to Debtor

The Trustee argues that Jack Goldenberg should be held jointly and severally liable with Pillar for the unauthorized post-petition transfers from Debtor to Pillar. The Trustee bases its arguments on the fact that Goldenberg was Pillar's sole member and owner, and that Goldenberg engaged in wrongdoing.

The bankruptcy court rejected the Trustee's arguments for finding Goldenberg jointly and severally liable with Pillar, finding that: 1) Pillar's corporate veil should not be pierced; and 2) Goldenberg was not personally liable in tort for conversion. The Trustee is not contesting the bankruptcy court's rejection of her conversion theory, but argues that, because "[a]ll operative acts [in the case] were by Goldenberg," the bankruptcy court should have pierced Pillar's corporate veil.

Under New York law, a corporate veil may be pierced when: 1) the corporate owners exercises complete dominion and control; and 2) they use that dominion to harm the plaintiff through fraud or wrongdoing. *Pergament v. Precision Sounds DJ's, Inc. (In re Oko)*, 395 B.R. 559, 563 (Bankr. E.D.N.Y. 2008) (citing *Badian v. Elliott*, 165 Fed. Appx. 886, 891 (2d Cir. 2006)). The veil-piercing standard is not changed when the corporation has a single-shareholder. *See N.Y. Ass'n for Retarded Children, Inc., Montgomery County Chapter v. Keator*, 606 N.Y.S.2d 784, 785 (N.Y. App. Div. 1993).

On appeal, the Trustee focuses her joint-and-several-liability argument on the fact that Goldenberg acts on behalf of Pillar and appears to exercise complete dominion and control over the corporation. However, as the sole member and owner of Pillar, Goldenberg necessarily was the individual acting on behalf of the company at all times. This fact alone does not warrant piercing

10

the corporate veil. If that was the case, any individual in a single-member company would never be able to avoid personal liability. The bankruptcy court found that Goldenberg consistently observed corporate formalities when acting for Pillar and found no evidence of fraud or wrongdoing by Goldenberg that would justify piercing the corporate veil under these circumstances. Because these findings are not clearly erroneous, this Court will not disturb them. Therefore, the bankruptcy court did not err in holding that Jack Goldenberg is not personally liable for the unauthorized post-petition transfers that Debtor made to Pillar.

## IV. CONCLUSION

For the reasons discussed herein above, the Court finds the bankruptcy court's Order should be and hereby is **AFFIRMED.** A separate judgment of even date consistent with this Opinion shall be entered.

**IT IS SO ORDERED**, this 30th day of March, 2012.

/s/ Susan O. Hickey
Hon. Susan O. Hickey
United States District Judge

## Other Orders/Judgments
4:11-cv-04043-SOH Pillar Capital Holdings, LLC et al v. Williams et al

### U. S. District Court

### Western District of Arkansas

## Notice of Electronic Filing

The following transaction was entered on 3/30/2012 at 1:10 PM CDT and filed on 3/30/2012
**Case Name:**  Pillar Capital Holdings, LLC et al v. Williams et al
**Case Number:** 4:11-cv-04043-SOH
**Filer:**
**Document Number:** 8

**Docket Text:**
**MEMORANDUM OPINION. Signed by Honorable Susan O. Hickey on March 30, 2012. (copy mailed to Judge Mixon)(cap)**

**4:11-cv-04043-SOH Notice has been electronically mailed to:**

Thomas S. Streetman  tstreetman@smmattorneys.com

Renee S. Williams  rswillia@cablelynx.com

Henry C. Shelton, III  henry.shelton@arlaw.com, carol.hall@arlaw.com

**4:11-cv-04043-SOH Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1094675213 [Date=3/30/2012] [FileNumber=751115-0]
[01d80bafe74c1707b48fabde00d184fb84c24cdcab39e1c50d2d87e68b1a09ad46e4
647e3e9316039c4325426c1b8c07893babcc5dfe85e1f9693319bc98de10]]